UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **ARTIS ANDERSON,** | **CIVIL ACTION NO. 5:16-71-KKC** |
| **Plaintiff,** | |
| **V.** | **<u>OPINION AND ORDER</u>** |
| **VANESSA M. DICKSON,** | |
| **Defendants.** | |

This matter is before the Court on various motions filed by the parties.

**I.  Background**

Plaintiff Artis Anderson is proceeding pro se but he has considerable experience in filing federal actions, having filed eight federal actions in this Court since 1994. This is at least his fourth federal action involving allegations that state officials interfered with his marriage and his third such action that involves his marriage to Mary Ellen Reynolds. *See Anderson v. Conway*, No. 6:12-cv-70-GFVT (E.D. Ky. filed April 2, 2012); *Anderson v. Wiley*, No. 5:16-cv-34-DCR (E.D. Ky. filed Feb. 1, 2016); *Anderson v. Beshear*, No. 5:15-cv-207-KKC (E.D. Ky. filed July 20, 2015) (*Anderson I*).

In brief, with this action, Anderson alleges that various individuals, including government workers and officials, conspired to have the Kentucky Cabinet for Health and Family Services appointed as his wife's guardian and to have his marriage annulled. He asserts that on May 18, 2015, two paramedics took his wife, Mary Ellen, to the hospital. He came to the hospital the following morning to pick her up but was informed she had been admitted for observation. On May 21, Mary Ellen's late daughter filed a petition in Woodford District Court seeking to be named Mary Ellen's guardian. Woodford District Court Judge Vanessa Dickson entered an order appointing the Cabinet as Mary Ellen's

legal guardian. Later, Jessamine Family Court Judge Jeff Moss signed an order annulling Anderson's marriage to Mary Ellen. Anderson alleges that, since the Cabinet became Mary Ellen's legal guardian, the state has stolen $250,000 from his wife and violated his constitutional rights.

In a prior action based on substantially the same allegations, Anderson sued the former Kentucky governor and attorney general, the two then unnamed paramedics who took his wife to the hospital, an individual Cabinet employee who he asserted was appointed as his wife's guardian, and the assisted-living facility where his wife received healthcare services. *See Anderson v. Beshear, et al.*, No. 5:15-cv-207-KKC (E.D. Ky. filed July 20, 2015). The Court dismissed that action, finding that all of the plaintiff's claims lacked the legal plausibility necessary for subject matter jurisdiction.

With this action, the plaintiff sues various additional individuals including Kentucky state court Judges Dickson and Moss; another Cabinet employee who Anderson identifies as Mary Ellen's court-appointed guardian; a social worker employed by the Cabinet who Anderson asserts falsely reported that he abused his wife; two police officers; the two now-named paramedics who Anderson alleges took Mary Ellen to the hospital knowing that she did not need emergency medical care; the assisted-living facility where Mary Ellen currently resides and its manager; and two doctors.

In his complaint, Anderson appears to assert that these individuals conspired to violate his constitutional right to marry. As to defendant J. Costigan, who is a police officer with the city of Versailles, Kentucky police department, Anderson may also allege that the officer violated his rights under the Fourth Amendment to be free from unreasonable searches. Anderson seeks a total of more than $500 million in compensatory and punitive damages.

2

By prior opinion, this Court dismissed the claims against Judges Dickson and Moss. The Court now reviews the claims against the remaining defendants.

## II. Analysis

The Court will first address the possible Fourth Amendment claim against Officer Costigan. Anderson asserts that Officer Costigan came to his residence to conduct a welfare check on Mary Ellen and then "secretly recorded communications" between him and his wife.

"[T]he Fourth Amendment protects people, not places; [w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Anderson could not have had a reasonable expectation of privacy in a conversation that took place in the officer's presence. Thus, Officer Costigan's recording of those events could not have violated Anderson's rights under the Fourth Amendment because Anderson made no effort to keep that interaction private. *See On Lee v. United States*, 343 U.S. 747, 753–54 (1952) ("Petitioner was talking confidentially and indiscreetly with one he trusted, and he was overheard ... [w]e find no violation of the Fourth Amendment here.") Accordingly, this claim must be dismissed.

As to Anderson's claim that all of the defendants conspired to violate his constitutional right to marry, this claim must also be dismissed. Throughout his complaint Anderson invokes 42 U.S.C. §§ 1981, 1983, and 1985. Section 1981 "prohibits racial discrimination in the making and enforcing of private contracts." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). The statute is, "by its very terms, limited to acts of racial discrimination." *Brady v. Bristol Meyers, Inc.*, 459 F.2d 621, 623 (8th Cir. 1972). Anderson has not pled sufficient facts to state a claim under Section 1981. Moreover, Section 1983 is the exclusive damages remedy for violations of rights guaranteed by Section

3

1981. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012). Accordingly, any claim asserted by Anderson under 42 U.S.C. § 1981 will be dismissed.

As to any claim under Section 1985, that statute prohibits three particular kinds of conspiracies: conspiracies to prevent a federal officer from performing his duties, 42 U.S.C. § 1985(1); conspiracies to obstruct justice or intimidate a party, witness, or juror, 42 U.S.C. § 1985(2); and conspiracies to deprive a person of equal protection of the laws on the basis of a racial or other class-based discriminatory animus, 42 U.S.C. § 1985(3). Subsection 3 requires that a claimant establish "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000) (quoting *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829 (1983)). Anderson does not make allegations sufficient to state a claim under any of these provisions. Accordingly, the Court will dismiss any claim under Section 1985.

As to his constitutional claim against the individual defendants under 42 U.S.C. § 1983, that statute prohibits "actions 'under color of state law' which deprive an individual of a right secured by the U.S. Constitution or a federal statute." *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir. 2003). "Thus, before a defendant may be held liable under section 1983, that defendant must first possess power by virtue of state law, then *misuse* that power in a way that violates federal constitutional rights." *Id*. (quoting *Christian v. Belcher*, 888 F.2d 410, 414 (6th Cir.1989)).

Anderson does not make any allegations that defendants Council Oaks, John Short, Thomas Quisenberry, Thomas Coburn, Robert Horn, or Benny Sowder were government officials or were otherwise working under color of state law. Accordingly, any § 1983 claim against these defendants must be dismissed.

4

As to Officers Edwards, Anderson alleges only that "he violated the Plaintiff's constitutional rights to enjoy his spousal rights while acting under color of state law." (DE 36, First Amended Complaint ¶ 3.) This single, conclusory allegation is insufficient to state a claim. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007) (internal citations omitted). Accordingly, the constitutional claim against Officer Edwards will be dismissed.

As to paramedics Rankin and Ford, Anderson alleges only that these defendants took Mary Ellen to the hospital knowing that she did not require emergency care. Even if these allegations were true, these actions are not sufficient to state a claim for violation of Anderson's right to marry.

As to the § 1983 claim against defendants Wiley and Biggerstaff – and as to all defendants – any claim that the guardian appointment or annulment violated Anderson's constitutional rights must be dismissed.

In *Anderson I*, this Court ruled that the appointment of a guardian does not infringe upon the right to marry. *Anderson v. Beshear*, No. 5:15-CV-207-KKC, 2015 WL 4717200, at *2 (E.D. Ky. Aug. 7, 2015). *Anderson I* was based on the state court's emergency order *temporarily* appointing the Cabinet for Health and Family Services as Mary Ellen's guardian (DE 26-5, Order.) Since that decision, a jury trial was conducted in state court and the jury found that Mary Ellen was wholly disabled in managing her personal affairs and financial resources. (DE 26-6, Disability Judgment.) In accordance with the jury's finding, Judge Dickson entered an order *permanently* appointing the Cabinet as Mary Ellen's guardian. (DE 26-6, Order.) The Court's prior finding that the appointment of a guardian

does not infringe the right to marry applies equally to the permanent guardianship.

More importantly, however, Anderson's challenges to the state court orders appointing the Cabinet as Mary Ellen's guardian and annulling the couple's marriage are barred under the *Rooker-Feldman* doctrine which "provides that federal district courts generally lack jurisdiction to review and determine the validity of state court judgments, even in the face of allegations that 'the state court's action was unconstitutional.'" *Carr v. Spencer*, 13 F. App'x 296, 298 (6th Cir. 2001) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). "Instead, review of final determinations in state judicial proceedings can be obtained only in the United States Supreme Court." *Id.* (citing 28 U.S.C. § 1257 and *Feldman*, 460 U.S. at 476). The finding in *Carr* is equally applicable here. Anderson's complaint "merely reflects [his] dissatisfaction with the state court's guardianship [and annulment] judgment[s] and is essentially an attempt to obtain unauthorized federal review of [those] judgment[s]." *Id.* Accordingly, any claim that any defendant violated Anderson's constitutional rights by obtaining the guardianship or annulment orders must be dismissed.

Anderson may also assert claims against the state and county employees in their official capacities. "An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n. 4 (6th Cir.2000). Thus, any claim against Wiley or Biggerstaff in their official capacities is the same as a claim against the state. Section 1983 provides that any "person" acting under color of state law who deprives another of his constitutional rights is liable to that individual. 42 U.S.C. § 1983. A state, however, "not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Accordingly, any claims against Biggerstaff and Wiley in their official capacities

6

must be dismissed.

As to Officers Costigan and Edwards, Anderson alleges that Officer Costigan is employed by the city of Versailles, Kentucky and that Officer Edwards is employed by the city of Nicholasville, Kentucky. He alleges that paramedics Rankin, and Ford are employed by Woodford County. Any official capacity claim against these defendants is actually a claim against the county or city that employs them. "Unlike states . . . local governments, municipalities, and counties are considered 'persons' within the meaning of 42 U.S.C. § 1983." *Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003). Nevertheless, "[a] municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004). This Court has determined that any constitutional claims against Officers Costigan and Edwards and paramedics Rankin and Ford in their individual capacities must be dismissed. Accordingly, any claim against Officers Costigan and Edwards and paramedics Rankin and Ford in their official capacities must also be dismissed.

Anderson may also assert certain state-law claims. For example, he asserts that Wiley has stolen from Mary Ellen and has failed to protect her assets and that other defendants have interfered with certain contracts between Mary Ellen and him. The Court does not interpret these claims to assert any constitutional violation. Further, these claims do not appear to form part of the same case or controversy as the constitutional claims which are based on the guardianship and annulment judgments and the recording of Anderson's conversation with Mary Ellen. Accordingly, the Court cannot exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367(a).

Further, the Court has dismissed all of Anderson's federal claims. The supplemental jurisdiction statute explicitly allows district courts to dismiss pendent state law claims if all

federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). "[G]enerally, 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.' " *Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)

This matter is at its initial stages. Any state-law claims are based on different factual assertions than the constitutional claims. Accordingly, the Court concludes that, even if it could exercise jurisdiction over any state-law claims, it should decline to do so. Pursuant to 28 U.S.C. § 1367(c)(3), this Court will exercise its discretion and will dismiss any state-law claims that Anderson may assert.

## III.   Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the motions to dismiss filed by Thomas Quisenberry (DE 11, 17, 47), Council Oaks and John Short (DE 14, 42), J. Costigan (DE 18, 51), Patricia Biggerstaff and Patricia Wiley (DE 26, 44) are GRANTED;

2) all claims asserted under 42 U.S.C. §§ 1981, 1983 and 1985 against all defendants are DISMISSED with prejudice; and

3) any state-law claims asserted by the plaintiff are DISMISSED without prejudice.

Dated July 26, 2016.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY